Davies, J.
The only question presented for decision is, whether there was such a deviation, by the brig Inda, in the voyage insured against, as discharged the underwriters from the loss sustained. In the present case, the assured warranted, in the first place, not to use ports or places in Texas, except Galveston, nor foreign ports or places in the Gulf of Mexico. For an additional premium paid the assured had permission to use the port of Laguna, in the Gulf of Mexico, for one voyage, without prejudice to the insurance. The warranty, therefore, by the assured, not to use any ports or places in the Gulf of Mexico was dispensed with by the assurers, by permitting the use of the port of Laguna for one voyage. It is-difficult to perceive upon what ground this permission to use that port can be construed into an authorization, or would sanction the use of another port, which the assured had warranted not to use. Such was not the contract of the parties, and the fact that an addititional premium was paid and exacted shows that both parties regarded the risk enhanced by the use of one of the ports warranted against. The brig did proceed to the port of Laguna, but, for reasons not -necessary to repeat, she was unable to use it for the purposes of her voyage. She then proceeded to the port of Sisal, one of the ports warranted against, when the loss occurred, to recover-which this action is brought. The rules of text writers and the authorities all indicate the strictness with which the assured is confined to the voyage marked out in the policy, as where the policy itself, besides indicating the termini of the voyage, contains any *392 directions as to the course which the ship shall take in sailing between them, such directions must be followed with the most scrupulous and literal- exactness, and the slightest failure to comply with them will amount to a fatal deviation. (1 Arn. on Ins., 362.) The same writer says that, hence, where liberty is given in the policy to touch at any one specified intermediate port, it will be a deviation, to put into any other than that named in the policy, though calling at such port may be equally sanctioned by general usages, independent of the policy, and though neither the risks nor premium would- have been increased had such .port been substituted for that named in the clause. (Id., 362.)
The case of Elliott v. Wilmer (7 Brown Par. Cases, 459), is referred to by this writer as a leading authority upon the English law of deviation, and as affording an excellent illustration of most of the principles laid down by him. That case was this: It was usual for vessels sailing from Carrón, in Scotland, with goods in freight, for Hull, in going down the -Frith-ofForth, to touch at different places, for the purpose of taking in and delivering goods particularly at Borneo, Stowness, Leith and Morrison’s Haven. • A merchant, who was desirous of insuring goods on a voyage from Carrón to Hull, directed his broker to effect an insurance, with liberty in the policy “to call as usual" (which would have enabled the ship to touch at all or any of the places above mentioned); instead of this, the broker, contrary to the directions of the merchant, and without Ms knowledge, insured the goods oh the voyage-from “Carrón to Hull, with liberty to call at Leith.” The premium was the same as though the general liberty to call as usual had been inserted in .the policy. The sMp sailed on her voyage, passed by Leith without calling there, but put into Morrison’s Haven; she sustained no damage, either in going into or coming out of the port, got safe again into the direct course of the voyage from Carrón to Hull, and had been proceeding on such course for about a day, when she was overtaken by a storm and wrecked on the coast of Northumberland, with a total loss of the cargo.
*393 The Scotch courts, upon this state of facts, decreed that the underwriters should pay the loss; but the House of Lords reversed this judgment, on the ground that putting into Morrison’s Háven, under a policy which contained no liberty to do so, but, on the contrary, gave express permission to put into , another named port, was a deviation, discharging the underwriters from all further liability. The House of Lords, in this case, applied the familiar and well established rule of “ ex-pressio unius, est exclusio alterius.”
The case of Kettell v. Wiggins (13 Mass., 68), affords an illustration of the rigor with which the courts require the assured to confine himself literally to the voyage insured against. In this case a vessel was insured from Gibraltar to the United States, with liberty to proceed to the Cape de Yerde Islands, for salt. On her arrival at the Island of May she found so many vessels there that she must have waited four or five weeks for her turn to take in a cargó of salt. The Governor of the island proposed to the master to go with his vessel to St. Jago and Fuego, two" other of the Cape de Yerde islands, and procure a cargo of provisions; and engaged that if he would, he should be loaded with salt as soon as he should return, although his turn should not have arrived. The master agreed to these proposals, went to these islands, brought provisions for the governor, and was immediately permitted to take his cargo of salt, and he was thus enabled to load his vessel considerably sooner than he would have been, if he had remained at the isle of May for his turn. After taking in the cargo, the vessel sailed on the return voyage, and was lost. This" was held to be a deviation which avoided the policy. Parker, Ch. J., said it was confidently insisted that as the effect of this expedition, at the request of the governor, was to shorten the duration of the voyage, by enabling the master to obtain his cargo much sooner than he could, it ought to be considered as done for the benefit of all concerned, and not amounting to a deviation. But he says masters have not a right to speculate in this manner upon the possible advantages of pursuing a route which does not belong to the voyage. They are to pursue the usual *394 course, and let the consequences fall where, they may. A case is cited in 2 Park on Insurance (p.-620), tried at- Nisi Prius, quite in point. There the plaintiff was a shipper of goods, in a vessel bound from Dartmouth to Liverpool. The ship sailed from Dartmouth, and put into Loo, a place she must of necessity pass by in the course of the insured voyage. But as she had no liberty given her by the policy to go into Loo, and although no accident befell her going into or coming out of Loo (for she was lost after she got out to sea again), yet Mr. Justice Yates held that this was a deviation and a verdict was accordingly found for the underwriters. Park (p. 619), says if the voyage be changed after the departure of the ship, it becomes a different voyage, and not that against which the insurer has undertaken to indemnify (which, he says, is the true objection to a deviation), the risk may be ten times greater, which probably the insurers would not have run at all, or, at least, would not without a large premium. Nor is it at all material whether the loss be or be not an actual consequence of the deviation, for the insurers are in no case answerable for a subsequent loss, in whatever place it may happen, or to whatever cause it may be attributed.
In Wooldridge v. Boydell (Doug., 16), Lord Mansfield said, when the insured intends a deviation from the direct voyage, it is always provided for, and- the indemnification adapted to it. There never was a man so foolish as to intend a deviation from the voyage described, when the insurance was made, because that would be paying without an indemnification. Deviation from the voyage insured arises from after-thought, after-interest, after-temptation. In Laird v. Robertson (4 Brown Par. Oases, 488), a ship was insured for a voyage from Virginia to Rotterdam, with leave to call af a port in England, and after the underwriters had signed the policy, the destination of the voyage was. altered to the port of Hull, there to discharge instead of Rotterdam, and a memorandum of this alteration was indorsed on the policy. Hull, is not a port in the course of a. voyage between Virginia and Rotterdam, but two degrees north of that course. The ship was afterwards lost, and it *395 was held by the House of Lords, that the alteration of the voyage vacated the policy as to all the underwriters, except those who signed the indorsement consenting to the change.
Even if Sisal had been a port at which the master was at-liberty to stop for any cause, it was a deviation in him to pass that port and proceed to Laguna, and then return to Sisal. On the assumption that the voyage was from Boston to Martinique, thence to Laguna, and from thence to Marseilles, and that the policy permitted the master to touch at the port of Sisal, it was a deviation in him to pass Sisal and proceed to Laguna, and from thence to return to Sisal. He must take the ports at which he is permitted to touch in succession. This point was directly ruled in Gardner v. Lenhouse (3 Turn., 16). That was an action upon a policy from London to Trinidad, or the Spanish main, with leave to call at all or any of the West India islands or settlements, and with ■ liberty to touch and stay at any port or places whatever or wheresoever. It was held that the assured must take all the ports at which he touches in the same succession in which they occur, in the course of his voyage insured. If ports of call are named in a policy, in a successive order, the ship must take them in the same succession in which they are named. If they are not named in any order in the policy, they must be taken in the order in which they occur, in the usual and most convenient and practicable course of the voyage, not according to the shortest geographical distances.-
In whatever aspect the case can be considered, it seems to be. well settled that, after the brig left the port of Laguna, to proceed to that of Sisal, she ceased to be under -the protection of the policy, and the underwriters were discharged. It was entering on a voyage not covered by the policy, and the loss having happened after the deviation, the judgment of the Superior Court was correct, and should be affirmed.
Denio, Ch. J., Wright, Balcom and Marvin, Js., concurred; Emott, J., dissented.
Judgment affirmed.